**FILED**

AUG 1 2 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **I N F O R M A T I O N** |
| | ) | |
| Plaintiff, | ) | **1 : 24 CR 00289** |
| | ) | |
| v. | ) | CASE NO: _____ |
| | ) | Title 15, United States Code, |
| MATTHEW MOTIL, | ) | Sections 78j(b) and 78ff; Title |
| | ) | 18, United States Code, Section |
| Defendant. | ) | 1343; and Title 17, Code of |
| | ) | Federal Regulations, Section |
| | ) | 240.10b-5 |

**JUDGE NUGENT**

GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise indicated:

The Defendant and Relevant Entities

1.      Defendant MATTHEW MOTIL was a resident of the Northern District of Ohio, Eastern Division.

2.      Defendant held a realtor's license from the State of Ohio and worked as a licensed real estate agent in the State of Ohio.

3.      Defendant was the incorporator and sole member of multiple companies in the State of Ohio that he formed to purchase and manage real estate, including but not limited to the following: NS Equity Cleveland, LLC; North Shore Equity Sales, LLC; North Shore Equity Management, LLC; BUYCLE100, LLC; BUYCLE112, LLC; BUYCLE114, LLC; BUYCLE158, LLC; BUYCLE175, LLC; BUYCLE176, LLC; INVCLE150, LLC; NSEM Mansfield 1, LLC; and NSEM Mansfield 2, LLC (collectively "the Motil Real Estate Companies").

4.    Defendant was also the owner and president of Gym 1 and Gym 2, physical fitness facilities located in or around Twinsburg, Ohio, and Cleveland, Ohio, both in the Northern District of Ohio, Eastern Division.

5.    Defendant controlled bank accounts in the names of several of the Motil Real Estate Companies, Gym 1, and Gym 2 at Bank 1, a federally insured financial institution headquartered in New York, New York.

6.    Individuals who invested in the Motil Real Estate Companies ("the Investors") resided in jurisdictions throughout the United States, including in the Northern District of Ohio.

7.    A "security" was a tradable financial asset.  One form of a security was a promissory note issued for investment purposes.

8.    Defendant used the email address matt@mariepaul.com to communicate with the Investors.  The email address was hosted by Internet Company 1, an email provider whose servers were located in the State of California.

<u>The Scheme to Defraud</u>

9.    From in or around October 2017 to on or about March 7, 2022, Defendant devised and executed a scheme to defraud Investors and obtain their money, and unlawfully enrich himself, by inducing Investors to invest in the Motil Real Estate Companies through promissory notes based on material misrepresentations.

<u>Manner and Means of the Scheme to Defraud</u>

10.    The manner and means by which Defendant carried out the scheme included, but were not limited to, the following:

a.    Defendant promoted his claimed expertise in investing in real estate among potential investors to establish their trust in him and in his ability to teach them to

2

profitably invest their money in the real estate market, including through a book he authored, a podcast he produced and hosted, social media posts he made, and websites he controlled, promoting himself as the "Cash Flow King":

    i.   Defendant was the author of a book, Man on Fire, which depicted Defendant's background leading to his successful career in real estate investing. The "about the author" section touted Defendant's claimed expertise at real estate investing.

    ii.   Defendant produced and hosted a podcast called "Cash Flow King," in which he promoted real estate investing as a means of making passive income.

    iii.   Defendant made numerous social media posts about his success in real estate investing.

    iv.   Defendant also maintained the websites "mariepaul.com" and "drmattmotil.com" that promoted Defendant's claimed experience in real estate investing. For example, Defendant represented that he had "worked with hundreds of investors from all over the world and helped them to grow massive wealth and passive income through remote real estate investments."

    b.    Defendant also used his book, podcast, social media posts, and websites to advertise to and solicit prospective investors to invest in real estate as a business enterprise to passively generate profit, and to invest their money with him and the Motil Real Estate Companies. His website, for example, included sections such as the following: "Free Guide: Out Of State Investing," "Getting Started In Real Estate," and "Start Investing In Real Estate Now."

It also provided a link to sign up for Defendant's newsletter. Defendant's social media posts advertised passive investment secured by mortgages with favorable rates of return.

c.       Once a prospective investor expressed interest, either by reaching out to Defendant directly or signing up for his email newsletter, Defendant would email them with "investment opportunities" for various properties, which were either controlled by one or more of the Motil Real Estate Companies or represented to Investors to be available for purchase by the Motil Real Estate Companies.

d.       Defendant represented to Investors that he would use investment money to rehab houses that Defendant controlled through one or more of the Motil Real Estate Companies or to purchase additional properties. Defendant represented that the updated properties would then either be rented out, refinanced with a bank, or sold at a significant profit.

e.       From in or around 2017 through in or around 2019, Defendant and the Motil Real Estate Companies purchased approximately 85 separate properties.

f.       Defendant induced Investors to invest with false statements promising high and consistent returns on the investment. Defendant used promissory notes, a type of security, to memorialize the investment. Defendant's promissory notes generally guaranteed between 8% and 15% rates of return.

g.       Defendant induced Investors to invest by misleading Investors regarding the safety and security of their investments. Defendant promised that their investment would be memorialized in a promissory note and secured by a mortgage on the property, and which mortgages Defendant promised or otherwise led Investors to reasonably believe he would record with appropriate government offices. Nearly all mortgages contained covenants affirming the Investors' senior lien position on the respective property and prohibiting Defendant from

4

creating or accruing any debt, lien, or charge that would have priority over the Investor's promissory note.

        h.      Instead, Defendant used the same properties over and over to obtain money from certain Investors in exchange for promissory notes "secured" by mortgages that he did not record. As a result he was able to solicit and obtain investments from multiple Investors, each of whom had been led to believe he or she held the sole mortgage on a single property, when, in fact, only one or none of the Investors actually held a valid, recorded mortgage, and the properties were overleveraged, leaving nearly all Investors without true security for their investments.

        i.      Defendant provided Investors with copies of the promissory notes and mortgages on the properties that appeared to have been notarized, certifying his signature as genuine. While some signatures had in fact been notarized by Defendant's administrative assistant, Person 1, Defendant also used a digital image of a notary signature page that he had created, with Person 1's signature and notary information, purporting to acknowledge Person 1's personal witnessing of the execution of the document. However, even after Person 1 left Defendant's employment in or around February 2020, Defendant continued using Person 1's electronic signature and notary stamp to "notarize" the mortgages he provided to some Investors along with their respective promissory notes.

        j.      Contrary to his representations, Defendant did not record the mortgages he issued to Investors and either failed to respond to Investor inquiries about the recording or gave Investors excuses for why their respective mortgages had not yet been recorded, such as long processing times at the clerk's office. By failing to record valid mortgages associated with the Investors' promissory notes, Defendant intentionally failed to secure the Investors' investments

as he had represented, and effectively prevented Investors from finding out about one another, allowing each to believe they held first lien position, as Defendant had represented.

       k.     At times, Defendant used Investors' money to perpetuate the scheme in the manner of a Ponzi scheme, using later-investing Investors' investments to pay off Investors who had invested earlier, thus perpetuating Investors' mistaken belief that their money had been profitably invested in property rehab projects, as Defendant had represented.

       l.     At times, Defendant also converted Investors' money to his personal or other professional use; to run the business of Gym 1 and to fund his personal expenses and extravagant lifestyle, including to buy courtside seats at Cleveland Cavaliers home games; to lease, and enter into negotiations to purchase, a mansion on Lake Erie, and to purchase a wedding vow renewal ceremony package at Disney World.

       m.    Defendant communicated with Investors using interstate wire transmissions, such as emails, to falsely reassure them of the safety of their investments or to provide excuses.

       n.     As part of the scheme, Defendant through these misrepresentations induced at least approximately 63 Investors to transfer at least approximately $7.3 million to Defendant and the Motil Real Estate Companies.

Acts in Furtherance of the Scheme to Defraud

11.     In furtherance of the scheme, and to accomplish its object and purpose, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant committed and caused to be committed the following acts, among others:

*Wainfleet Avenue, Cleveland*

12.     On or about November 17, 2017, Defendant, via one of the Motil Real Estate Companies, purchased a two-bedroom, one-bath, 696-square-foot single-family house on

6

Wainfleet Avenue in Cleveland, Ohio, for $35,000.  At the time Defendant purchased the property, it had a tax-assessed value of $25,300.

13.　　From on or about July 17, 2018, through on or about May 10, 2021, Defendant induced at least twelve different Investors to transfer a total of approximately $406,000 to the Motil Real Estate Companies in exchange for short-term promissory notes with favorable interest rates, secured by what was represented to each Investor as the sole mortgage on the Wainfleet property.  Defendant used a portion of the funds transferred from the Investors to repay previous Investors, to pay interest on loans from institutional lenders, to make payments on a personal credit card, and to fund the Bank 1 account for Gym 1.  Defendant did not disclose to any Investor that there were other mortgages on the property corresponding to promissory notes issued to other Investors and, contrary to what he led Investors to believe, did not record any of the mortgages at the time they were executed.

### *Hearthstone Road, Parma*

14.　　On or about December 1, 2017, Defendant, via one of the Motil Real Estate Companies, purchased a three-bedroom, two-bath, 1296-square foot single-family house on Hearthstone Road in Parma, Ohio, for $47,000.  At the time Defendant purchased the property, it had a tax-assessed value of $75,800.  Defendant recorded a mortgage in connection with the purchase on or about December 1, 2017.

15.　　From on or about January 30, 2019, through on or about January 27, 2021, Defendant induced at least nineteen different Investors to transfer a total of approximately $1,300,000 to the Motil Real Estate Companies in exchange for short-term promissory notes with favorable interest rates secured by what was represented to each Investor as the sole mortgage on the Hearthstone property.  Defendant used a portion of the funds transferred from the Investors to repay previous Investors, to pay interest on loans from institutional lenders, to

make payments on a personal credit card, and to fund the Bank 1 account for Gym 1. Defendant did not disclose to any Investor that there were other mortgages on the property corresponding to promissory notes issued to other Investors and, contrary to what he led Investors to believe, did not record any of the subsequent mortgages. A release of the initial purchase mortgage was recorded on or about August 4, 2021.

### *Leroy Avenue, Cleveland*

16.     On or about November 1, 2018, Defendant, via one of the Motil Real Estate Companies, purchased a three-bedroom, one-bath, 907-square-foot single-family house on Leroy Avenue in Cleveland, Ohio, for $60,000. At the time Defendant purchased the property, it had a tax-assessed value of $55,900. Defendant recorded a mortgage in connection with the purchase on or about November 1, 2018.

17.     From on or about May 1, 2019, through on or about April 8, 2021, Defendant induced at least twelve different Investors to transfer a total approximately $645,000 to the Motil Real Estate Companies in exchange for short-term promissory notes with favorable interest rates secured by what was represented to each Investor as the sole mortgage on the Leroy property. Defendant used a portion of the funds transferred from the Investors to repay previous Investors, to pay interest on loans from institutional lenders, to make payments on a personal credit card, and to fund the Bank 1 account for Gym 1. Defendant did not disclose to any Investor that there were other mortgages on the property corresponding to promissory notes issued to other Investors and, contrary to what he led Investors to believe, did not record any of the subsequent mortgages.

### *Rocky River Drive, Cleveland*

18.     In or around November 2018, Defendant solicited an Investor to invest approximately $438,000 with the Motil Real Estate Companies in exchange for an 18-month

promissory note at 12% APR collateralized with a mortgage on a 28-unit apartment building on Rocky River Drive in Cleveland, Ohio.

19.     Defendant provided the Investor with a promissory note and a mortgage on the Rocky River Drive property signed and dated November 16, 2018, which Defendant, contrary to his representations, never recorded.

20.     Upon receiving the Investor's funds, Defendant used a portion of the Investor's investment to make approximately $16,000 in payments to earlier Investors; $69,000 in payments to institutional lenders; $47,000 in credit card payments; and $20,000 for other personal expenses.

21.     Defendant then used approximately $228,000 of the funds provided by the Investor and $765,000 from an institutional lender, Institutional Lender 1, to purchase the Rocky River Drive property for $993,000 on or about December 12, 2018.  At the time of the transfer, the tax valuation of the property was $890,000.

22.     Defendant executed a mortgage with Institutional Lender 1 on or about December 12, 2018, despite executing a mortgage with the Investor a month earlier.  Defendant did not advise Institutional Lender 1 of the Investor's prior unrecorded mortgage.  Institutional Lender 1's mortgage was recorded on or about December 12, 2018.

23.     From on or about May 1, 2019, through on or about May 25, 2020, Defendant induced at least eight additional Investors to transfer approximately $2,036,000 to the Motil Real Estate Companies in exchange for short-term promissory notes with favorable interest rates secured by what was represented to each Investor as the sole mortgage on the Rocky River Drive property.  Defendant used a portion of the funds transferred from the Investors to repay previous Investors and to pay interest on loans from institutional lenders.  Defendant did not disclose to all

Investors that the institutional lender already held a mortgage on the property and did not disclose that there were other mortgages on the property corresponding to promissory notes issued to other Investors.  Defendant did not record any of the mortgages associated with the Investors' investments.

### *Multi-Parcel Purchase 1 (Richland County Purchase)*

24.     On or about March 22, 2019, Defendant, via one of the Motil Real Estate Companies, made a multi-parcel purchase consisting of 23 properties in Richland County, Ohio ("the Richland County Purchase"), for a total price of $500,322, using a combination of funds from Institutional Lender 1 and from an initial Investor.

25.     Defendant executed a mortgage for the Richland County Purchase to the initial Investor on or about February 18, 2019, but did not record the mortgage at that time.  Defendant executed a mortgage for the Richland County Purchase to Institutional Lender 1 on or about March 22, 2019.  Institutional Lender 1's mortgage was recorded on or about March 27, 2019. The initial Investor's mortgage was not recorded until May 24, 2019.

26.     From on or about April 1, 2019, through on or about September 22, 2020, Defendant induced at least twenty different Investors to transfer approximately $1,141,000.00 to him in exchange for short-term promissory notes with favorable interest rates secured by what was represented to each Investor as the sole mortgage on one or more of the properties in the Richland County Purchase.  Defendant used approximately $700,000 of the funds obtained from Investors to repay and release the initial Investor. The satisfaction of the initial Investor's mortgage was recorded on or about December 4, 2020.  Defendant also used a portion of the funds transferred from Investors to repay previous Investors, to pay interest on loans from institutional lenders, to make payments on a personal credit card, and to fund the Bank 1 account for Gym 1. Defendant did not disclose to any Investor that Institutional Lender 1 already held a

mortgage on the property and did not disclose that there were other mortgages on the property corresponding to promissory notes issued to other Investors. Defendant did not record any of the mortgages associated with the subsequent Investors' investments.

### *Multi-Parcel Purchase 2 (Multi-County Purchase)*

27.     On or about March 22, 2019 (the same day that Defendant completed the Richland County Purchase), Defendant, via one of the Motil Real Estate Companies, made a multi-parcel purchase consisting of 29 properties in Richland County, Ohio; eight properties in Marion County, Ohio; six properties in Crawford County, Ohio; and one property in Hardin County, Ohio ("the Multi-County Purchase"), for a total price of $500,322 (identical to the price of the Richland County Purchase), using funds from Institutional Lender 1.

28.     Defendant executed a mortgage for the Multi-County Purchase with Institutional Lender 1 on or about March 22, 2019. Institutional Lender 1's mortgage was recorded on or about March 27, 2019.

29.     From on or about November 25, 2019, through on or about July 1, 2020, Defendant induced at least twelve different Investors to transfer approximately $943,000 to him in exchange for short-term promissory notes with favorable interest rates secured by what was represented to each Investor as the sole mortgage on one or more of the properties in the Multi-County Purchase. Defendant used a portion of the funds transferred from Investors to repay previous Investors, to pay interest on loans from institutional lenders, and to fund the Bank 1 account for Gym 1. Defendant did not disclose to any Investor that Institutional Lender 1 already held a mortgage on the property and did not disclose the existence of other mortgages on the property corresponding to promissory notes issued to other Investors. Defendant did not record any of the mortgages associated with the Investors' investments.

*West 50th Street, Cleveland*

30.      On or about September 13, 2019, Defendant, via one of the Motil Real Estate

Companies, purchased a four-bedroom, one-bath, 1,207-square-foot single-family house on West

50th Street in Cleveland, Ohio, for $30,000.  At the time Defendant purchased the property, it

had a tax-assessed value of $19,400.

31.      From on or about September 5, 2019, through on or about January 5, 2021,

Defendant induced at least six different Investors to transfer a total of approximately $205,000 to

him in exchange for promissory notes secured by what was represented to each Investor as the

sole mortgage on the West 50th Street property.  Defendant used a portion of the funds

transferred from the Investors to repay previous Investors, to pay interest on loans from

institutional lenders, and to fund the Bank 1 account for Gym 1.  Defendant did not disclose to

any Investor that there were other mortgages on the property corresponding to promissory notes

issued to other Investors and did not record any of the mortgages.

32.      Defendant sold the property on April 22, 2021, for $32,000.

*March 2021 email*

33.      On or about March 22, 2021, Defendant sent an email with the subject line

"Investor Update – March 2021" to the Investors, which included the representation that he had

enlisted a number of realtors to list and sell all but three of the properties owned by the Motil

Real Estate Companies in order to repay all Investors.

34.      Despite this, from between on or about March 23, 2021, through May 18, 2021,

Defendant successfully solicited at least another four Investors to invest as "first lienholders" on

the already-overleveraged Wainfleet and Leroy Properties.

<u>COUNT 1</u>
(Securities Fraud, 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5)

The United States Attorney charges:

35.     The factual allegations of paragraphs 1 through 34 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

36.     From in or around October 2017 through on or about March 7, 2022, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MATTHEW MOTIL did knowingly and willfully, in connection with the purchase and sale of securities, and through means and instrumentalities of interstate commerce and the mails, directly and indirectly use and employ manipulative and deceptive devices and contrivances, by: (1) employing a device, scheme and artifice to defraud; (2) making and causing to be made untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (3) engaging in an act, practice and course of business which operated as a fraud or deceit upon the Investors.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

<u>COUNT 2</u>
(Wire Fraud, 18 U.S.C. § 1343)

The United States Attorney further charges:

37.     The factual allegations of paragraphs 1 through 34 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

38.     From in or around October 2017 through on or about March 7, 2022, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MATTHEW MOTIL knowingly devised and intended to devise a scheme and artifice to defraud and obtain money

13

from investors by means of materially false and fraudulent pretenses, representations, and promises, as described above.

39.     On or about March 22, 2021, in the Northern District of Ohio, Eastern Division, Defendant, for the purpose of executing and attempting to execute the foregoing scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds by means of wire and radio communication, to wit: email communication, routed across state lines, from Defendant to Investors with the subject line "Investor Update – March 2021," sent from Defendant's matt@mariepaul.com email address to Investors in the Northern District of Ohio and elsewhere, seeking to induce additional financial contributions, conceal the nature of the scheme, and lull the Investors into a false sense of security about the financial soundness of the Motil Real Estate Companies.

All in violation of Title 18, United States Code, Section 1343.

REBECCA C. LUTZKO
United States Attorney

By:  _____

Elliot Morrison
Chief, White Collar Crimes Unit