# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | JUDGE DONALD C. NUGENT |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:24-CR-00289 |
| ) | |
| MATTHEW M. MOTIL, ) | |
| ) | **DEFENDANT'S UNOPPOSED** |
| Defendant. ) | **MOTION TO CONTINUE** |
| ) | **SENTENCING** |

Now comes the Defendant, Matthew M. Motil ("Mr. Motil"), by and through his counsel, and hereby respectfully requests this Court grant a continuance of the sentencing hearing scheduled in this case for an additional thirty (30) days from June 9, 2025, to allow for the resolution of a number of outstanding issues related to both Mr. Motil's bankruptcy case before the United States Bankruptcy Court for the Northern District of Ohio, Case No. 22-10571 (the "Bankruptcy Case") and the Receivership Case before the Court of Common Pleas for Cuyahoga County, Ohio, *Rehn v. INVCLE150, LLC, et al.*, Case No. CV-21-947601 (the "Receivership Case"). These unresolved issues in these related ancillary cases will likely have a material impact on factors applicable to Mr. Motil's sentencing. While counsel hoped these issues would have been resolved before the end of the existing extension, that has not occurred for various reasons set forth herein. As before, this request, after conferring with Government counsel, is unopposed by the Government due to the circumstances. For the reasons set forth in this Motion, Mr. Motil's sentencing should be continued to on or about July 9, 2025.

**I.** **Summary of Prior Continuance Requests**

On November 13, 2024, the defense filed an unopposed motion to continue sentencing

pending resolution of the Receivership Case (Doc #: 13), which this Court granted on November 14, 2024 (Doc #: 14).

On or about December 20, 2024, the state court in the Receivership Case entered an order granting the Receiver's motion establishing a wind-down process for the receivership (the "Receivership Wind-Down Order"), including a requirement the Receiver file a final report with an accounting and a final fee application. The Receivership Wind-Down Order also set forth a claim administration process, whereby creditors would be notified of the need to file a claim, and distributions from the receivership would ultimately be made on account of allowed claims from surplus funds.

On January 6, 2025, Mr. Motil filed a second unopposed motion to continue sentencing. (Doc #: 17). As grounds for that request, Mr. Motil pointed primarily to the Receiver's wind-down motion and the impact the wind-down process would have both as to application of the federal sentencing guideline factors (namely, loss calculation) and Mr. Motil's restitution obligation. (*Id*.). This Court granted Mr. Motil's request for a second continuance on or about January 7, 2025, continuing the sentencing date to April 9, 2025. (Doc #: 18).

On or about March 27, 2025, Mr. Motil filed a third unopposed motion for a continuance. (Doc #: 23). The basis for that request was largely the same as the January 6, 2025, motion, in that a number of material issues related to the receivership wind-down process remained unresolved. (*Id*.). The Court granted the request on March 27, 2025. (Doc #: 24). Sentencing is currently scheduled for June 9, 2025.

## II.   Issues Involving the Receivership Case and Bankruptcy Case Are Still Unresolved, Warranting an Additional Continuance

### A.   Unresolved Issues from Receivership Case

Undersigned defense counsel, the Government, and even counsel for some of the creditors

have struggled to obtain complete and accurate financial information from the Receiver and the Receiver's prior counsel. As more questions are asked, more issues continue to come to light. As set forth in Mr. Motil's prior continuance request, defense counsel learned that because of these accounting issues, the Receiver's prior counsel was removed from the Receivership matter, and new counsel at the firm has taken over. New Receiver's counsel has worked to provide some additional information regarding the accounting for the Receivership. Generally speaking, however, the records provided still lack sufficient detail. Many questions remain open and are unanswered.

For example, rent collections related to the real estate under the control of the Receiver are not identified by property. Moreover, there are still significant, unexplained discrepancies in the accounting for the Receivership. For instance, for certain property sales, defense counsel has identified discrepancies between the amounts the Receivership should have retained from the property sales, which would be used to distribute to creditor victims, and what the records show was actually retained by the Receivership. In just one example, a property was sold for over $1 million, and the Receivership was supposed to retain approximately $82,500 from that sale (which, of course, would have been available for distribution to creditor victims). Records obtained from counsel for the Receiver, however, do not show this amount was in fact retained. Instead, the records show that only approximately $800 was retained by the Receiver from this sale.[1] These accounting issues could potentially add up to hundreds of thousands of dollars that could have (and perhaps should have) gone to creditor investors.

---

[1] New Receiver's counsel attempted to explain to defense counsel there were adjustments made to the accounting for rents due from the property, but no satisfactory explanation or documentation has been provided yet to substantiate these claims.

It is also unclear if all Receivership creditors were notified of the opportunity to submit claims in the Receivership. Therefore, distributions to creditors on account of valid claims from the Receivership may be in question. Despite requests, Receiver's counsel has not provided defense counsel copies of documentation creditors submitted in support of their claims (as the Receiver's notice required). In fact, there has been conflicting information about the number of claims that were filed. Receiver's counsel originally conveyed to defense counsel that only seven creditors submitted claims in the Receivership, but subsequent documentation indicates that approximately thirty claims were submitted. Receiver's counsel also told defense counsel that notice to Receivership creditors was sent in January, despite a certificate of service never being filed in the Receivership Case. The purported list of the creditors who received the notice service was insufficient as it appeared to be a an exact copy of the creditor list from the Bankruptcy matter. That list is insufficient as the creditors from the two cases are not necessarily synonymous. And even all the creditors listed within the service list did not receive notice. By way of illustration of this issue, Mr. Motil's parents, who are significant creditors themselves, never received a notice from the Receiver.

Because of these issues, defense counsel (and the Government) continues to be incapable of reasonably determining, in real terms, the specific loss amounts suffered by individual investors (and applicable restitution amounts) and will be unable to do so (with any reasonable accuracy) until further clarification is provided by the Receivership and its new counsel.

Since Mr. Motil's March 27, 2025, motion, unfortunately, a number of these outstanding information gaps continue to persist. For example, there have been no satisfactory answers provided by Receiver's counsel as to whether and to what extent proceeds from the sales of subject properties were distributed to creditors. Moreover, whether rents were collected on subject

4

properties and to what extent these rents were distributed to creditors is still an open question. Relatedly, what, if any, amounts remain due to creditors after the distributions of rents described above remain an enigma. Further, there continues to be a lack of clarity as to which creditors received notice of the receivership claim process, which creditors submitted claims, and what supporting documentation, if any, was provided in support of any submitted claims.

    Mr. Motil has engaged professionals from Aurora Management Partners ("Aurora") who have confirmed that these issues remain. Aurora suggested follow-up areas of inquiry to the Receiver's counsel (such as information on the nature of the property sales, i.e. public vs. private, requesting numerous accounting records and bank account information, etc.), which has in fact been conveyed to receiver's counsel. On May 23, 2025, Receiver's counsel provided a document dump of approximately 3GB. Due to the volume of data, the manner in which it was organized, and its late production, it is not clear that this production is responsive to each information request. Should the Receiver fail to furnish complete responses to the information requests, Mr. Motil may be left with no choice other than to request the issuance of a subpoena to the Receiver and his counsel pursuant to Fed. R. Crim. P. 17.

    Because a complete and accurate accounting of the proceeds from sales by the Receiver, any rents the Receiver received, and distribution of such to creditors may have an impact on the loss amount, and certainly will have an impact on the restitution in this case, a further continuance is warranted. Defense counsel conferred with the Government in depth regarding this requested extension and the reasons for it, and the Government has confirmed it is not opposed to this Motion to Continue. The parties agree that more time is necessary to obtain additional information and records from counsel for the Receiver.

To the extent the Receiver and his counsel are able to produce all of the information and documentation requested, the parties (both the defense and Government) will need the additional requested time to review and analyze this material and confer with one another on the impact it may have on the loss amount and restitution. A further continuance will enable professionals from Aurora to provide this Court with a more comprehensive overview of the losses herein. A further continuance may also very likely narrow or even eliminate certain disputed issues at sentencing, thereby saving judicial and party resources. The parties (defense and Government) have conferred regarding a plan in the event the Receiver does not provide any additional information. The parties, absent exceptional circumstances, do not anticipate seeking any further continuances of sentencing in this matter.

    **B.**    **Unresolved Issues from Bankruptcy Case**

Aside from the issues from the Receivership Action. Mr. Motil's Bankruptcy Case remains pending. There are still assets controlled by the Trustee that have yet to be liquidated, and the proceeds distributed to his creditors. These include a potential malpractice claim that could result in a six-figure award to the Trustee and, in turn, Mr. Motil's creditors. Here again, final restitution amounts depend on the conclusion of that process. Because the proceeds and distribution of both the receivership and the bankruptcy estates could have a direct impact on the restitution in this case and potentially call into question the applicability of a certain guidelines enhancement(s), a continuance is appropriate, serves justice, and promotes judicial and party economy by obviating the need for subsequent hearings on these issues.

    **C.**    **Consequences of Moving Forward While Outstanding Issues Remain Unresolved**

As discussed in Mr. Motil's March 27, 2025, motion, moving forward now, without accurate receivership and bankruptcy figures, creates a risk of perhaps erroneously applying a four-

6

level increase for substantial financial hardship despite those victims potentially recovering a significant portion, if not all, of their original investment. Although this enhancement itself calls for an additional four points, its effect is far greater as its applicability ensures Mr. Motil is not entitled to a two-point reduction as a zero-point offender pursuant to USSG. §4C1.1. A brief continuance is warranted where important and relevant facts are imminent. The alternative is potentially imposing an inappropriate sentence because expediency, rather than justice, was prioritized.

**III.    Conclusion**

Mr. Motil remains committed to rectifying his mistakes and moving forward with his life. But it is imperative that all parties herein and this Court are apprised of all relevant information prior to this Court's imposition of a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. As relevant here, these purposes include the need to provide just punishment for the conduct at issue as well as restitution to victims.

It is the objective of all parties to obtain all relevant information and incorporate such into each sentencing memoranda before sentencing the Defendant. In light of the above, and to achieve this common goal, a continuance of 30 days, to on or about July 9, 2025, should be granted.

Respectfully submitted,

*/s/ Paul M. Flannery*
Paul M. Flannery (OH: 0091480)
**Flannery | Georgalis, LLC**
1375 E. 9th St., 30th Floor
Cleveland, OH 44114
(216) 466-0162
paul@flannerygeorgalis.com

*Attorney for Defendant Matthew Motil*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2025, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Paul M. Flannery*
Paul M. Flannery (OH: 0091480)

*Attorney for Defendant Matthew Motil*